The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pittman and the briefs on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award. Accordingly, the Opinion and Award by Deputy Commissioner Pittman is affirmed.
* * * * * * * *
This case was heard before Deputy Commissioner Pittman in Lillington on 9 December 1993. A Form 21 Agreement previously approved in this matter on 26 March 1992 is incorporated herein by reference as is the Pre-Trial Agreement entered into by the parties prior to the hearing in this matter. Following the hearing, the record in this matter was held open in order to allow the parties an opportunity to depose medical experts or submit stipulated medical records. Thereafter, following the receipt of the depositions of Drs. Vyas and Whitehurst as well as proposed Opinions and Awards from counsel for the parties, the record in this matter was duly closed.
All objections raised by counsel at the depositions of Dr. Whitehurst and Dr. Vyas are ruled upon in accordance with the law and the Opinion and Award rendered in this matter.
* * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
As aforementioned, all stipulations contained in the Form 21 Agreement and the Pre-Trial Agreement are incorporated herein by reference. Additionally, it appears that the parties have furthermore stipulated based on the contents of their proposed Opinions and Awards that plaintiff's average weekly wage on or about January 2, 1991 was $376.00.
* * * * * * * * * * *
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following additional
FINDINGS OF FACT
1. At the time of the admittedly compensable injury by accident giving rise hereto on January 2, 1991, plaintiff was employed by defendant-employer as a drag line operator. At the time of plaintiff's injury, plaintiff had been employed by defendant-employer continuously for approximately 26 years. In carrying out his job duties as a drag line operator, plaintiff was required to sit in a seat in a machine described as a "walking" electric machine that digs gravel sand and dirt up to a depth of approximately 60-65 feet. While sitting in the drag line machine, plaintiff manipulated the machine with both hands and feet operating levers. The heaviest lifting involved as a drag line operator occurred while performing maintenance on the machine approximately once weekly. During the normal operation of the drag line machine, there was not a significant amount of strain or physical exertion involved in the job duties.
2. Following the injury of January 2, 1991, plaintiff was evaluated by Dr. Briggs of Lillington, who rendered conservative treatment to plaintiff ultimately referring him to Dr. Whitehurst of the Triangle Spine Center. Apparently, Dr. Briggs also referred plaintiff prior to seeing Dr. Whitehurst for an MRI evaluation which indicated a large extruded disc fragment at the L5 level and a small disc herniation at the L4-5 level of plaintiff's lumbar spine.
3. Plaintiff was first seen at Triangle Spine Center on January 22, 1991 where he related a history of prior episodes of back pain which had resolved until the accident of January 2, 1991 which necessitated him seeking medical treatment. On January 22, 1991, plaintiff related that he had returned to light duty work following the January 2, 1991 injury but was continuing to experience low back pain which radiated down his left hip into his left leg. Straight leg raising was positive on the left and while the MRI was felt to be of marginal resolution, it was not redone. Based on plaintiff's examination findings, conservative treatment was continued.
4. Although plaintiff continued to report to work following the January 2, 1991 incident up to and including January 8, 1992, defendant-employer paying plaintiff his full regular salary which was greater than the amount he would have received in workers' compensation benefits, plaintiff never returned to his regular work duties with defendant-employer. Rather plaintiff would go into work, attempt to run the drag line, and if his back bothered him he would lay down in his truck or go "piddle around" the plant. Prior to January 2, 1991, plaintiff had not missed any work because of his low back condition and plaintiff had been capable following his episodes of back pain to resume his regular employment with defendant-employer.
5. After seeing Dr. Whitehurst in January 1991, plaintiff thereafter during 1991 and 1992 continued to experience several episodes of his back "going out on him" and although plaintiff would at times note improvement in his back condition, he remained under Dr. Whitehurst's care. Furthermore, as aforementioned, although he remained on defendant-employer's payroll, he was not able to resume his regular work activities on any sustained basis.
6. In December 1991, plaintiff's back condition worsened to the point where he was unable to report to work at all due to his back pain from December 27 until January 30, 1991 and from January 2 until January 13, 1992. On January 13, 1992, plaintiff returned to the "light duty" type of work being provided to him by defendant-employer and continued to remain so employed until January 23, 1992 when he was told by his supervisor that he had been "laid-off."
7. After being "laid-off", plaintiff attempted to locate employment but was unable to perform the job duties due to the continuing back and left leg pain which he experienced. After January 23, 1992, plaintiff has continued to seek medical treatment for his back condition seeing Dr. Whitehurst until July 12, 1993 and seeing Dr. Vyas commencing November 2, 1993.
8. While Dr. Whitehurst opined that plaintiff was not disabled and would be capable of performing some work activities he did not give an opinion regarding plaintiff's ability to perform his regular duties as a "drag line operator." Furthermore, the responses of Dr. Whitehurst and Dr. Vyas to the inaccurate hypothetical questions proposed by defendants that plaintiff returned to regular work duty after January 2, 1991 with defendant-employer are not deemed controlling in this matter.
9. While the medical evidence of record does not establish the date of the attainment of maximum medical improvement, plaintiff has reached maximum medical improvement in that he does not desire to undergo surgical treatment for his back condition.
10. The admittedly compensable injury by accident plaintiff sustained on January 2, 1991 aggravated plaintiff's pre-existing back condition. Since January 2, 1991, plaintiff daily activities have been significantly limited and he has not been capable of resuming his regular work duties for defendant-employer as a result of said injury. Since January 24, 1992, defendant-employer has not offered plaintiff employment within his capacity. When considering plaintiff's age of 61 years, his eighth grade education and his 26 years of work experience with defendant-employer, the undersigned finds plaintiff's testimony that he has been unable to locate employment within his capacity credible.
11. Plaintiff's loss of earnings after January 24, 1992 resulted from the injury by accident giving rise hereto.
* * * * * * * * * * *
The foregoing findings of fact and conclusions of law engender the following additional:
CONCLUSIONS OF LAW
1. As a result of the admittedly compensable injury by accident plaintiff sustained on or about January 2, 1991, plaintiff sustained an aggravation of his pre-existing back condition. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to temporary total disability compensation benefits at the rate of $247.50 per week, commencing January 24, 1992 and continuing barring a change of condition, return to work, or further Order of the Industrial Commission for the temporary total disability he has sustained as a result of this injury by accident. N.C. Gen. Stat. § 97-29; Bridges v.Linn-Corriher Corp., 90 N.C. App. 397, 368 S.E.2d 388, disc. rev.den.; 323 N.C. 171, 373 S.E.2d 104 (1988).
3. Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent the treatment tends to effect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Plaintiff is entitled to compensation at the rate of $247.50 per week from January 24, 1992 and continuing subject to a change in condition, a return to work or further Order of the Industrial Commission for the total disability he has sustained as a result of this injury by accident. That portion of this compensation which has accrued shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident when bills for the same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded herein is hereby approved for plaintiff's counsel, the accrued portion of the fee shall be deducted from the accrued benefits and thereafter defendants shall forward every fourth check of compensation benefits to plaintiff's counsel until plaintiff is no longer entitled to compensation benefits.
4. Defendants shall pay an expert witness fee of $180.00 to Dr. Vyas.
5. Defendants shall pay the costs.
 S/ __________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ DIANNE C. SELLERS COMMISSIONER
S/ __________________ COY M. VANCE COMMISSIONER